WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


MOAB INDUSTRIES, LLC,     )
     )
     Plaintiff,     )
     )
     vs.     )
     )
FCA US, LLC, formerly known as Chrysler     )
Group, LLC,     )
     )     No. 3:12-cv-8247-HRH
     Defendant.     )     (Prescott Division)
_____)


DECISION

     The following is the court's decision on the merits of this case based upon the pleadings of the parties, previous orders of the court, testimony and exhibits received at the trial of this case, the parties' briefs in lieu of oral argument, and their proposed findings of fact and conclusions of law.

Proceedings

     This case was opened with plaintiff's complaint.[1]  Plaintiff's Count 1 alleges a federal trademark infringement claim.  Plaintiff's Count 2 alleges a federal unfair competition claim.  Plaintiff's Count 3 is a state law claim for trademark dilution based upon A.R.S. § 44-1448.01.  Plaintiff's Count 4 is a claim for common law unfair competition.  Defendant denied plaintiff's claims.[2]  Defendant separately asserted five

---

[1]Docket No. 1.

[2]Docket No. 16.

amended counterclaims for relief.[3]  Defendant's first counterclaim seeks a declaratory judgment that defendant's use of the mark "MOAB" does not infringe, dilute, or otherwise violate plaintiff's purported rights.  Defendant's second counterclaim for relief seeks cancellation of plaintiff's MOAB INDUSTRIES mark.  Defendant's third counterclaim is one for trademark dilution pursuant to 15 U.S.C. § 1125.  Defendant's fourth counterclaim is for infringement by plaintiff upon defendant's registered trademarks.  Defendant's fifth counterclaim for relief is a state law claim for dilution based upon A.R.S. § 44-1448.01.  Plaintiff has denied defendant's counterclaims.[4]

Defendant moved for summary judgment.  Plaintiff's Count 3 (the state law dilution claim) was dismissed with prejudice.[5]  In summary judgment proceedings, the court was required to view the evidence then before the court (and in particular, the evidence of the likelihood of confusion) in the light most favorable to the non-moving party, plaintiff.  Plaintiff loses that benefit after trial.  The court is now entitled to weigh all of the evidence, make credibility determinations, and rule in accordance with the weight of the evidence.

Plaintiff requested a jury trial.  That request was denied.[6]  The case was tried to the court commencing April 11, 2016, and concluding April 14, 2016.  Written closing

---

[3]Docket No. 56.

[4]Docket No. 64.

[5]Docket No. 135 at 32 (sealed document).

[6]Docket No. 135 at 40.

DECISION                                                                                          - 2 -

arguments were requested and filed.[7]  Proposed findings of fact and conclusions of law were requested and filed.[8]

In what follows, the court has made findings of fact (numbered paragraphs 1 through 63 as to each of plaintiff's claims and defendant's counterclaims), interspersed with discussion of applicable law and authorities, and followed by conclusions of law (paragraphs 64 through 76).

<u>FINDINGS OF FACT</u>

A. <u>Agreed Facts</u>

On February 29, 2016, in anticipation of trial, the parties filed their joint statement of uncontested facts.[9]  The court adopts those uncontested facts and incorporates them into its decision as follows:

1.      Moab Industries, LLC (herein "plaintiff"), is an Arizona corporation with its principal place of business at 820 East Sheldon Street in Prescott, Arizona.  Plaintiff is owned by John Silvernale.

2.      Neither party has a principal place of business in Moab, Utah, and neither party maintains an office in Moab, Utah.

3.      FCA US LLC, formerly Chrysler Group LLC (herein "defendant"), is a Delaware corporation with a principal place of business at 1000 Chrysler Drive in Auburn Hills, Michigan 48236.

4.      Defendant manufactures and sells to its licensed dealers throughout the United States CHRYSLER, JEEP, DODGE, and RAM brand vehicles.

---

[7]Docket Nos. 228, 243, 254, and 262.  (Sealed documents.)

[8]Docket Nos. 256 and 263.  (Sealed documents.)

[9]Docket No. 167.

5.     Defendant manufactures and sells to its licensed dealers throughout the United States JEEP WRANGLER vehicles.

6.     Defendant and its predecessors in interest have used the JEEP mark for more than 60 years and the WRANGLER mark since the 1980s in connection with the sale of vehicles.

7.     Defendant owns the following U.S. Trademark Registrations for the JEEP mark:  U.S. Registration Nos. 526,175; 1,081,322; 1,129,553; 1,130,015; 1,128,972; 1,129,828; 1,134,153; 1,236,540; 2,461,861; 2,512,866; 2,586,284; 2,635,685; 2,681,201; 2,729,404; 2,800,213; and 2,849,309.[10]

8.     Defendant owns the following U.S. Trademark Registrations for the WRANGLER mark:  U.S. Registration Nos. 2,602,935 and 1,557,843.

9.     Defendant owns the following U.S. Trademark Registrations for the JEEP GRILLE Design Mark:  U.S. Registration Nos. 2,924,936; 2,823,099; 2,732,021; 2,161,779; 2,794,553, and 2,764.249.

10.     In addition to the JEEP mark and the JEEP GRILLE Design Mark, defendant's JEEP WRANGLER vehicles bear the WRANGLER mark.

11.     Plaintiff is in the business of customizing or "upfitting" vehicles.

12.     The primary vehicle that plaintiff customizes or upfits is the JEEP WRANGLER vehicle, which is manufactured by defendant.

13.     Plaintiff's website, www.moabindustries.com, depicts mostly JEEP vehicles.

14.     Plaintiff does not remove the JEEP mark, the JEEP GRILLE Design Mark, or the WRANGLER mark from the vehicles it upfits and resells.

---

[10]Defendant's JEEP and related marks were registered in Class 12.

DECISION                                                                                      - 4 -

15.    Plaintiff has no documentary evidence showing sales prior to 2005 of goods or services in connection with its MOAB INDUSTRIES or MOAB marks.

16.    Plaintiff's total sales of upfitted vehicles consisted of 53 vehicles in 2011, 70 in 2012, and 92 in 2013.

17.    Plaintiff has sold its customized vehicles at dealer auctions and licensed resale dealers.[11]

18.    On February 1, 2011, the United States Patent and Trademark Office ("USPTO") issued U.S. Trademark Registration No. 3,912,705 for the service mark MOAB INDUSTRIES to plaintiff for "automotive conversion services, namely, installing specialty automotive equipment" in Class 37.

19.    In June 2012, defendant conducted an audit of one of its dealerships, Mountain Home Auto Ranch in Idaho.

20.    On June 13, 2012, defendant filed an intent-to-use trademark application for the trademark MOAB under Serial No. 85/650,654 for use in connection with "[m]otor vehicles, namely, passenger automobiles, their structural parts, trim and badges" in Class 12.

21.    Also on June 13, 2012, defendant's legal department performed a search for the use of MOAB in connection with motor vehicles.  The results of this search included plaintiff's registration for the MOAB INDUSTRIES service mark for "[a]utomotive conversion services, namely, installing specialty automotive equipment" in Class 37, along with a variety of other MOAB-formative marks, such as MOAB TAXI for "taxi transport" in Class 39 and MOAB STAR for "lights for vehicles," as well as MOAB

---

[11]Plaintiff's sales were concentrated in Arizona, Colorado, Wyoming, Idaho, and other western states.

DECISION                                                                                    - 5 -

standing alone for: "bicycles" in Class 12; "retail store and online retail store services in the fields of clothing, camping gear, sporting goods," and the like in Class 35; "juices and fruit drinks" in Class 32; "cutlery" in Class 8; "eyewear; namely, eyeshields for use in sports activities" in Class 9; "distribution job management tools for . . . computers . . . . [and] technical support services and computer services" in Classes 9 and 42; "training/certification course for individuals and groups on recognizing, reducing and managing violent and aggressive behavior" in Class 41, and for CDs and CD ROMs featuring such courses in Class 9.  The search results also included common law uses like MOAB 4X4 OUTPOST and MOAB OFFROAD.

22.     Third parties operate automotive conversion businesses under names incorporating the term "Moab," such as "Moab Offroad" in Lexington, Kentucky, owned by Max Dollinger, and "Moab 4x4 Outpost" in Moab, Utah, owned by Steve Nantz.

23.     On September 3, 2012, the USPTO issued an Office Action initially refusing defendant's Application Serial No. 85/650,654 "because of a likelihood of confusion with the marks in U.S. Registration Nos. 3912705 and 4078497."  Registration No. 3912705 is plaintiff's registration.

24.     The USPTO's September 3, 2012, initial refusal stated that defendant's "mark MOAB is similar in sound, meaning, and appearance to registrant's mark MOAB INDUSTRIES," that defendant's "goods, namely, passenger automobiles, parts, trims and badges are closely related to registrant's services," and that "[u]se of these marks on closely related goods and services is likely to result in confusion."

25.     Defendant responded to the September 3, 2012, Office Action on March 4, 2013, arguing that there is no likelihood of confusion between plaintiff's use of MOAB

DECISION                                                                                              - 6 -

INDUSTRIES for automotive conversion services in Class 37 and defendant's use of MOAB for vehicles in Class 12.

26.     In a Final Office Action dated April 2, 2013, the USPTO refused "registration for the applied-for mark … because of a likelihood of confusion" with MOAB INDUSTRIES' mark and one other mark.

27.     On October 28, 2013, the USPTO issued a suspension notice suspending action on defendant's U.S. Trademark Application Serial No. 85/650,654 in light of the present lawsuit, which plaintiff filed on December 7, 2012.

28.     The USPTO's October 28, 2013, suspension notice stated:  "[b]ecause the civil proceeding(s) pertains to an issue that could directly affect whether applicant's mark can be registered, action on this application is suspended pending termination of the civil proceeding(s)."

29.     For model year 2013, defendant introduced a JEEP WRANGLER MOAB Special Edition vehicle.  Defendant manufactured and sold approximately 3,375 JEEP WRANGLER MOAB Special Edition vehicles.

B. Plaintiff's Federal Trademark Claims

"As is often done, [plaintiff] frames its claims under sections 32 and 43(a) of the Lanham Act in terms of trademark infringement and unfair competition, respectively." Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 n.8 (9th Cir. 1999).  "[T]he analysis under the two provisions is oftentimes identical."  Id. at 1047 n.8.  Because this is the case here, plaintiff's Count 1 and Count 2 can be, and  have been, evaluated together.

To establish a federal trademark infringement claim,  plaintiff has to prove two elements:  (1) "a valid, protectable trademark, and (2) [defendant's] use of the mark is

likely to cause confusion." S. Calif. Darts Ass'n v. Zaffina, 762 F.3d 921, 929 (9th Cir. 2014) (quoting Applied Info. Sciences Corp. v. eBAY, Inc., 511 F.3d 966, 969 (9th Cir. 2007)). "The test for 'likelihood of confusion' requires the factfinder to determine whether a 'reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the goods or service bearing one of the marks.'" Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 630 (9th Cir. 2005) (quoting Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998)). But there are two distinct types of trademark infringement claims: forward confusion and reverse confusion. "Forward confusion occurs when consumers believe that goods bearing the junior mark [here defendant] came from, or were sponsored by, the senior mark holder [here plaintiff]." Id. "By contrast, reverse confusion occurs when consumers dealing with the senior mark holder [here plaintiff] believe that they are doing business with the junior one [here defendant]." Id. "In such a case, the smaller senior user, such as [plaintiff], seeks to protect its business identity from being overwhelmed by a larger junior user who has saturated the market with publicity." Cohn v. Petsmart, Inc., 281 F.3d 837, 841 (9th Cir. 2007).

In their briefing on defendant's motion for summary judgment, the parties debated whether or not plaintiff had asserted a reverse confusion claim or a forward confusion claim. In ruling on the motion for summary judgment, the court concluded that plaintiff had pleaded a reverse confusion claim.[12] The parties continued to disagree as to whether or not plaintiff pleaded a reverse confusion case. However, just prior to trial, plaintiff

---

[12]Docket No. 135 at 10. (Sealed Document.)

confirmed that the issue to be tried was a claim for reverse confusion.[13]  Plaintiff's infringement claim was in fact tried as a reverse confusion claim.

30.     Plaintiff's MOAB INDUSTRIES trademark is valid and protectable. Plaintiff's MOAB unregistered mark was employed in commerce by plaintiff prior to defendant's first use of the MOAB mark on its MOAB Special Edition.

31.     Plaintiff was a reseller of vehicles (mostly JEEP WRANGLER vehicles) which plaintiff purchased new from authorized JEEP dealers.  In one instance, a customer of plaintiff purchased a JEEP WRANGLER from an authorized dealer and arranged for plaintiff to take delivery of the vehicle for upfitting,

32.     Defendant sells newly-manufactured vehicles bearing its marks such as WRANGLER through its authorized new car dealers all over the country.  Defendant also sells a MOAB branded, after-market wheel.  The wheels do not bear the MOAB mark. Defendant's use of MOAB in connection with after-market wheels predated plaintiff's sale of MOAB branded, upfitted vehicles.  There is no evidence suggesting the likelihood of confusion between MOAB branded wheels and plaintiff's MOAB branded, upfitted JEEP WRANGLER vehicles.

The second element of a federal trademark claim (whether defendant's use of the MOAB mark is likely to cause confusion) calls into play the Sleekcraft factors.  AMF, Inc.  v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).  The Sleekcraft factors are:

1.     strength of the mark;

2.     proximity of the goods;

3.     similarity of the marks;

_____

[13]Docket No. 193.

4.      evidence of actual confusion;

5.      marketing channels used;

6.      type of goods and the degree of care likely to be
         exercised by the purchaser;

7.      defendant's intent in selecting the mark; and

8.      likelihood of expansion of the product lines.

Id.  "The Ninth Circuit has suggested that three Sleekcraft factors are especially pertinent

in reverse confusion cases:  (1) the strength or arbitrariness of the mark; (2) the

relatedness of the parties' goods; and (3) the similarity of the marks."  Glow Industries,

Inc. v. Lopez, 252 F. Supp. 2d 962, 986 (C.D. Cal. 2002).

The court makes the following findings as to the Sleekcraft factors.

Strength of the Mark (factor 1)

33.      The court finds that the MOAB mark, which both plaintiff and defendant

affix to JEEP WRANGLER vehicles, is relatively weak, lying for purposes of this case

somewhere between suggestive and arbitrary.  See One Indus., LLC v. Jim O'Neal

Distrib., Inc., 578 F.3d 1154, 1164 (9th Cir. 2009).  "Suggestive" marks are presumed

conceptually weak.  Echo Drain v. Newsted, 307 F. Supp. 2d 1116, 1124 (C.D. Cal.

2003).  The MOAB mark is conceptually weak.  Plaintiff has produced no evidence of the

commercial strength of the MOAB mark as used by plaintiff.  Defendant has produced no

evidence of the commercial strength of the MOAB mark as used by defendant, and

defendant no longer uses the MOAB mark on its vehicles.  The apparent conceptual and

commercial weakness of the MOAB mark diminishes the likelihood of reverse confusion.

Proximity of the Goods (factor 2)

The proximity of goods is evaluated considering whether the products are

complimentary, sold to the same class of purchasers, and similar in use and function.

Network Automation, Inc. v. Advanced Systems Concepts, Inc., 638 F.3d 1137, 1150 (9th Cir. 2011).

34.    Plaintiff's and defendant's products are not complementary, but they are closely related goods.  Plaintiff's MOAB vehicle and defendant's MOAB Special Edition are both JEEP WRANGLER vehicles that have been upfitted in somewhat different ways to enhance their off-road capabilities.  They are sold to the same class of purchasers and have similar uses and functions.  While plaintiff's and defendant's MOAB vehicles are highway-legal, the primary customer base for both appears to be those who enjoy the sport of off-road four-wheeling.  The side-by-side appearance of the parties' respective upfitted JEEP WRANGLER vehicles is quite different.  Plaintiff's vehicle has a far more robust stance.  Nevertheless, this factor tends to support a claim that plaintiff's MOAB vehicle and defendant's MOAB Special Edition might be confused with one another.

Similarity of Marks (factor 3)

35.    Plaintiff's MOAB INDUSTRIES registered mark and defendant's MOAB mark employed on its upfitted WRANGLER vehicles are superficially distinct.  However, what is most striking about the parties' respective upfitted vehicles is that both place the MOAB mark in large letters on both sides of the hood of their vehicles.  This circumstance suggests some potential confusion.

Evidence of Confusion (factor 4)

36.    Plaintiff offered live and deposition testimony in support of its contention that there was actual confusion as to the source of plaintiff's upfitted JEEP WRANGLER which the plaintiff resold as its MOAB brand.

37.    A common thread running thorough the testimony of plaintiff's witnesses is the fact that web search inquiries with respect to the name Moab regularly turned up first

DECISION                                                                                                    - 11 -

a link to defendant.[14]  However, when a person scrolled past references to JEEP or MOAB, one would locate, among others, the MOAB INDUSTRIES website.  Those searches did not suggest any connection between plaintiff and defendant, and plaintiff's website expressly disclaimed any connection between plaintiff and defendant.

(a)     Jackson and Watson purchased JEEP vehicles upfitted by plaintiff and later encountered defendant's MOAB Special Edition vehicle.  The testimony of Jackson and Watson is irrelevant to plaintiff's claim of reverse confusion because neither Jackson nor Watson was a potential customer.  Jackson and Watson both knew they owned vehicles upfitted by plaintiff.

(b)     The testimony of Eastlack does not support plaintiff's reverse confusion contention.  It is clear from Eastlack's trial testimony that she knew that both plaintiff and defendant were selling MOAB brand JEEP vehicles.  She had expressed in a letter to Silvernale the belief that there was a connection between his company and defendant.  Silvernale took offense.  Because Silvernale had a client-banker relationship with Eastlack, what Eastlack wrote to Silvernale was more likely than not biased by a need to favorably resolve any damage to these parties' relationship.  Eastlack testified under oath that she was not a potential customer of plaintiff because she could not afford one of plaintiff's MOAB vehicles.

(c)     The testimony of Popejoy, Holiday, Parnisi-Jones, and Patnode is potentially suggestive of reverse confusion.  But a closer examination of their testimony shows that in fact they were not confused at all.[15]  Leading questions caused some of

---

[14]Probably because defendant paid for such preferential display of defendant's web address.

[15]To the extent that these witnesses have testified that other, unidentified people

(continued...)

plaintiff's witnesses to express "confusion" when they learned of defendant's MOAB Special Edition.  Rather than being confused however, these witnesses had questions about the source of the MOAB Special Edition, and there is no evidence linking those questions (or expressions of "confusion") to any potential or actual effect on customers' purchasing decisions.

Popejoy was a buyer for Northwest Motor Sports which bought and sold seven to ten of the JEEPS upfitted by plaintiff.  Upon seeing a MOAB Special Edition vehicle, he recognized that it was not a MOAB INDUSTRIES vehicle.  He subsequently went on-line and found information about defendant's MOAB vehicle.

Holiday was the owner of a JEEP vehicle upfitted by plaintiff.   Holiday knew he was purchasing a JEEP vehicle that had been upfitted by plaintiff.  Holiday was aware of the disclaimer on plaintiff's website, advising that MOAB INDUSTRIES was not endorsed by defendant.

Parnisi-Jones was a potential customer of plaintiff.  In mid-2012, he saw a MOAB INDUSTRIES vehicle at a dealership that sold one or more MOAB INDUSTRIES vehicles.  When he again contacted the dealership, it had no more of plaintiff's vehicles.  A computer search of "Moab" turned up defendant first; but Parnisi-Jones' further search turned up MOAB INDUSTRIES' website.  He was not confused.

(d)      Patnode was a purchaser of a MOAB INDUSTRIES upfitted JEEP vehicle sold by Northwest Motor Sports.  After the purchase, Patnode learned of defendants' MOAB Special Edition in searching for more information about the vehicle which he had purchased.  Information as to the JEEP WRANGLER Special Edition was located by

---

[15](...continued)
were confused, that testimony is rejected as inadmissible hearsay.

Patnode, but still further inquiry turned up confirmation that he had purchased a vehicle upfitted by plaintiff.

(e)      Defendant called as its expert on the subject of confusion Dr. Ravi Dhar. The court finds that defendant's expert is qualified to offer an opinion as to confusion on the part of customers in connection with trademarked products.  Dr. Dhar was asked about his "overall impression of the likelihood of confusion" in this case.[16]  Dr. Dhar's opinion was that:

> there's a minimal amount of confusion in the marketplace.  I call it de minimis, but basically, I mean, there was very little that I saw that told me that there was confusion in this marketplace.[[17]]

In support of that opinion, Dr.  Dhar parsed the testimony of Popejoy, Holiday, Parnisi-Jones, and Patnode.

38.      Based upon Dr. Dhar's testimony, and in consideration of plaintiff's live and deposition testimony, the court finds that, at best, plaintiff's actual reverse confusion evidence is <u>de minimis</u>.  Plaintiff has produced no substantial evidence of confusion on the part of customers for plaintiff's MOAB vehicles.  Dr. Dhar did not perform nor did plaintiff undertake any survey evidence addressing the subject of customer confusion.

39.      The lack of substantial evidence of actual confusion suggests little likelihood of confusion.

<u>Marketing Channels Used (factor 5)</u>

40.      The parties' uncontested facts (Findings of Fact 4 and 17) reflect that the parties' marketing channels are very different.  Defendant sells "off the assembly line"

---

[16]Tr. 807:12-13.  Docket No. 238 (sealed document).

[17]<u>Id.</u> at 807:14-17.

new vehicles through its authorized dealers.  Plaintiff purchases new vehicles from defendant's dealers, upfits them, and resells them through auction and licensed resale dealers, in some instances the used car lots of defendant's authorized dealers.  This factor suggests little likelihood of confusion.

Type of Goods and the Degree of Care Likely to be Exercised by Purchasers (factor 6)

41.     Both plaintiff's and defendant's MOAB vehicles are expensive.  While they are both highway-legal, the vehicles are intended for off-highway use under difficult to extreme circumstances.  These are not purchases likely to be made without careful consideration and investigation of the product.  This factor suggests little likelihood of confusion.

Defendant's Intent in Selecting the Mark (factor 7)

42.     Defendant's marketing staff selected the MOAB mark largely in consideration of defendant's long-standing participation in off-road jamborees at Moab, Utah.  There is no evidence that defendant's marketing staff had knowledge of plaintiff's use of the MOAB mark in making their recommendation to management.  Plaintiff endeavored but has failed to produce anything more than a suspicion that defendant's top management knew of plaintiff's registered MOAB INDUSTRIES mark or plaintiff's use of the MOAB mark on plaintiff's upfitted vehicles when the MOAB mark was selected for use on defendant's MOAB Special Edition.  Defendant's Arizona vice president Erickson knew of plaintiff and its use of the MOAB mark on upfitted JEEP vehicles.  Defendant's audit group knew of plaintiff's business and purchases of new JEEP WRANGLER vehicles.  Defendant had designated plaintiff as a fleet purchaser; but there is no evidence that what Erickson and others knew of plaintiff's business was ever

DECISION                                                                                           - 15 -

conveyed to defendant's legal department or top management prior to Chrysler CEO Manley's approval of defendant's MOAB Special Edition.  In approving use of the MOAB mark, defendant did not intentionally replicate plaintiff's prior use of the MOAB mark.

43.     At the time defendant applied to the USPTO for registration of its MOAB mark, defendant's legal (trademark) department ordered a broad search of prior use of the MOAB name.  That search disclosed the registration of plaintiff's MOAB INDUSTRIES mark as well as the use of the MOAB mark by many others.  The USPTO declined to register defendant's MOAB mark, pointing to possible confusion because of plaintiff's MOAB INDUSTRIES mark.  That decision by the USPTO remains subject to further review.  The USPTO finding of potential confusion is entitled to very little weight inasmuch as the USPTO would not have had access to most of the evidence which is before the court.

Likelihood of Expansion of Product Lines (factor 8)

44.      It is highly unlikely that plaintiff would ever manufacture vehicles. Plaintiff's president would like to franchise his MOAB vehicle, but at the present time, that is simply an aspiration.

45.     Although factor 2 (proximity of the goods) and factor 3 (similarity of the marks) suggest some likelihood of confusion, the other six Sleekcraft factors suggest little likelihood of confusion.  In particular, the court finds that factor 4 (evidence of actual confusion), factor 5 (marketing channels used), and factor 6 (degree of care likely to be exercised by the purchaser) weigh strongly in favor of a finding that confusion between plaintiff's upfitted MOAB vehicle and defendant's MOAB Special Edition vehicle is unlikely.

DECISION                                                                                       - 16 -

46.     On the basis of the foregoing, paragraphs 33 through 45, the court finds that a reasonable, prudent consumer in the market for a highway-legal, off-road enhanced performance vehicle is unlikely to be confused as to the origin of vehicles upfitted and resold by plaintiff or vehicles manufactured by defendant, both of which are branded MOAB.

47.     The court finds on the basis of paragraphs 30 through 46 that defendant has not infringed on plaintiff's MOAB INDUSTRIES or MOAB trademarks and defendant has not engaged in unfair competition.

### C. Plaintiff's Common Law Unfair Competition Claim

"In Arizona, the common law doctrine of unfair competition 'encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation.'" HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 946 (D. Ariz. 2013) (quoting Fairway Constructors, Inc. v. Ahem, 970 P.2d 954, 956 (Ariz. Ct. App. 1998)). "Under Arizona law, '[t]he universal test [for unfair competition] is whether the public is likely to be confused.'" Id. (quoting Doe v. Arizona Hosp. & Healthcare Ass'n, No. CV 07-1292-PHX-SRB, 2009 WL 1423378, *11 (D. Ariz. Mar. 19, 2009)).

48.     As set out in paragraphs 33 through 46 above, the court has found it to be unlikely that plaintiff's customers will confuse plaintiff's MOAB vehicles with defendant's MOAB Special Edition vehicles.  Defendant has not engaged in common law unfair competition.

### D. Defendant's First Counterclaim:  Declaratory Judgment

This court has jurisdiction of complaints for declaratory relief pursuant to 28 U.S.C. § 2201.  Here, defendant seeks a declaration that its MOAB mark does not infringe, dilute, or otherwise violate plaintiff's purported rights.  The court declines to

DECISION                                                                          - 17 -

take up this counterclaim because the relief which is sought is adequately addressed by the court's findings and conclusions with respect to plaintiff's claims and defendant's other counterclaims.

### E. Defendant's Second Counterclaim:  Trademark Cancellation

Defendant contends that plaintiff's use of the MOAB INDUSTRIES registered mark on vehicles manufactured by Chrysler misrepresented the source of defendant's vehicles because plaintiff does not remove defendant's registered JEEP marks, and therefore should be cancelled.

To establish its counterclaim for trademark cancellation, defendant has to prove that  "'(1) there is a valid ground why [plaintiff's] trademark should not continue to be registered and (2) [it] has standing.'"  Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 735 F.2d 346, 348 (9th Cir. 1984) (quoting Int'l Order of Job's Daughters v. Lindeburg & Co., 727 F.2d 1087, 1091 (Fed. Cir. 1984)).

One valid ground for cancelling a trademark is "if the registered mark is being used by ... the registrant so as to misrepresent the source of the goods or services on or in connection with which the mark is used."  15 U.S.C. § 1064(3).  "'A cancellation claim for misrepresentation under [§ 1064(3)] requires [evidence] that registrant deliberately sought to pass off its goods as those of petitioner.  Willful use of a confusingly similar mark is not sufficient.'"  Karoun Dairies, Inc. v. Karoun Dairies, Inc., No. 08cv1521-L(WVG), 2010 WL 3633109, at *10 (S.D. Cal. Sept. 13, 2010) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 20:60 (4th ed. 2010)).

Section 14 of the Lanham Act confers standing to cancel a trademark registration on "any person who believes that he is or will be damaged ... by the registration of a mark...." 15 U.S.C. § 1064.

49.     Plaintiff is a reseller of vehicles (mostly JEEP WRANGLER vehicles) which plaintiff purchased new from defendant's authorized dealers.

50.     Plaintiff does not remove defendant's registered marks from the vehicles it "upfits."

51.     There is no evidence that plaintiff is claiming to have manufactured the JEEP WRANGLER vehicles that it resells.  Plaintiff's MOAB vehicle is clearly identified as a MOAB INDUSTRIES product; and plaintiff's advertising clearly advises potential customers that plaintiff's MOAB vehicles are not endorsed by defendant.

52.     There is no evidence that plaintiff's resale of JEEP WRANGLER vehicles as plaintiff's MOAB vehicles has in any fashion caused economic harm to defendant. There is also no evidence that defendant has lost any good will or in any other way been damaged by plaintiff's use of its mark on vehicles that also bear defendant's marks.

F. <u>Defendant's Third and Fifth Counterclaims:  Trademark Dilution</u>

To establish a counterclaim of federal trademark dilution, a defendant has to prove that:  (1) its marks are famous and distinctive; (2) plaintiff is using the mark in commerce; (3) plaintiff's use began after defendant's marks became famous; (4) and plaintiff's "use of the mark[s] is likely to cause dilution by blurring or dilution by tarnishment." <u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 634 (9th Cir. 2008).  The elements necessary to prove a state law trademark dilution counterclaim are basically identical.  <u>See</u> A.R.S. § 44-1448.01  ("The owner of a mark that is famous in this state shall be entitled ... to an injunction against another person's commercial use of a mark or trade name, if the use

begins after the mark has become famous and causes dilution of the distinctive quality of the mark....").

Defendant claims that plaintiff's resale of defendant's WRANGLER vehicles without removal of defendant's registered marks (JEEP, JEEP GRILLE, and WRANGLER) diminish the value of defendant's marks.  Defendant contends that plaintiff's upfitted JEEP WRANGLERs are an inferior product.

53.   Defendant's registered marks (JEEP, JEEP GRILLE, and WRANGLER) are famous and distinctive.

54.   Plaintiff is a commercial reseller of vehicles (mostly JEEP WRANGLER vehicles) which plaintiff purchased new from defendant's authorized dealers.

55.   In reselling vehicles manufactured by defendant, plaintiff  has left in place defendant's registered marks.

56.   Plaintiff began selling its MOAB vehicles in 2005, long after defendant's registered marks became famous.

57.   There is no evidence that the value of defendant's marks has been lessened by plaintiff's resale of JEEP WRANGLER vehicles.  Plaintiff's resale of defendant-manufactured JEEP WRANGLER vehicles has in no fashion blurred or tarnished defendant's registered trademarks.

58.   Although her testimony was guarded, defendant's trademark attorney testified that she was unaware "prior to today" of any actual dilution caused by plaintiff.

59.   Other than defendant's bold assertions of inferior quality, there is no evidence that vehicles upfitted and resold by plaintiff are inferior in any respect.  There is no substantial evidence (only speculation) about the stability of plaintiff's upfitted vehicles.

DECISION                                                                                          - 20 -

60.     Owners of MOAB vehicles upfitted by plaintiff who testified were well satisfied with their vehicles and plaintiff's follow-up services.

G.  Defendant's Fourth Counterclaim:  Federal Trademark Infringement

As set out in Section B of this decision, to establish a federal trademark infringement claim, defendant has to prove two elements:  (1) a valid, protectable trademark, and (2) plaintiff's use of the mark is likely to cause confusion.

61.     Defendant's JEEP, JEEP GRILLE Design Mark, and WRANGLER trademarks are valid and protectable.

The second element of a federal trademark claim, the likelihood of confusion, again calls into play the Sleekcraft factors.  In Section B of this decision, those factors were employed to address plaintiff's claim that defendant's use of the MOAB mark infringed upon plaintiff's use of the MOAB mark.  Here the court reviews and readopts its prior findings as to the likelihood of confusion, but now in the context of a forward confusion claim:  that plaintiff is trading upon defendant's registered trademarks.  The court observes that defendant has argued throughout these proceedings, and especially in its closing argument and reply brief,[18] that customers are not confused because both parties have employed the MOAB mark on the vehicles which they sell.

62.     Although the parties' respective vehicles are readily distinguishable, the use of MOAB by both parties – and in particular, the fact that both plaintiff's and defendant's MOAB vehicles display defendant's registered JEEP, JEEP GRILLE, and WRANGLER registered marks – gives rise to questions (some say confusion).  Defendant has offered no evidence of confusion, and defendant's trademark attorney testified that she was not "aware of anybody in the world who expressed a belief that [plaintiff] was actually

---

[18]Docket Nos. 243 and 262.

manufacturing Jeeps."[19]  Plaintiff's witness testimony shows that questions (confusion) have been rapidly resolved.  The resale of JEEP WRANGLER vehicles with plaintiff's MOAB mark has not been shown to have diverted any sales from defendant to plaintiff.

63.    The court finds by a preponderance of the evidence that potential customers for JEEP WRANGLER vehicles are not confused by reason of both plaintiff and defendant using the MOAB mark.

## CONCLUSIONS OF LAW

64.    The court has original jurisdiction of plaintiff's claims as asserted in Counts 1 and 2.  28 U.S.C. §§ 1331 and 1338.  The court has supplemental jurisdiction of plaintiff's claim asserted in Count 4.  28 U.S.C. § 1367.  Plaintiff's Count 3 was heretofore dismissed with prejudice.[20]

65.    Plaintiff owns a valid, protectable, registered trademark:  MOAB INDUSTRIES.

66.    Defendant owns valid, protectable, registered trademarks:   JEEP, the JEEP GRILLE Design Mark, and WRANGLER.

67.    Plaintiff's rights based upon the MOAB INDUSTRIES registration are limited to automobile conversion services.  Defendant's trademarks for JEEP, the JEEP GRILLE Design Mark, and WRANGLER have to do with and are limited to the manufacture of vehicles.

68.    Courts differentiate between forward confusion and reverse confusion claims.  Plaintiff's federal trademark infringement claim is for reverse confusion.

---

[19]Tr. at 236, lns. 19-21, Docket No. 230.

[20]Docket No. 135.

Plaintiff expressly waived any claim of forward confusion,[21] and the case was tried on plaintiff's reverse confusion theory.

69.     Plaintiff has failed to prove by preponderance of the evidence that defendant's use of the MOAB mark was likely to cause confusion on the part of reasonably prudent customers for plaintiff's upfitted vehicles.  Accordingly, defendant has not infringed on plaintiff's registered trademark (MOAB INDUSTRIES) by selling defendant's JEEP WRANGLER MOAB Special Edition.  Plaintiff's Count 1 for federal trademark infringement (Lanham Act, § 32, 15 U.S.C. § 1114) is dismissed.

70.     Plaintiff's Count 2 for federal unfair competition fails for lack of proof of confusion:  that is, defendant has not created the false or misleading impression that defendant's JEEP WRANGLER MOAB Special Edition vehicles are those of plaintiff. Plaintiff's Count 2 for federal unfair competition under 15 U.S.C. § 1125(a) is dismissed.

71.     Plaintiff's Count 4 for common law unfair competition fails because plaintiff has not established by a preponderance of evidence the likelihood of confusion between the parties' respective vehicles.  Plaintiff's Count 4 is dismissed.

72.     The court has jurisdiction of defendant's first counterclaim pursuant to 28 U.S.C. § 2201.  The court has original jurisdiction of defendant's second, third, and fourth counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338.  The court has supplemental jurisdiction of defendant's fifth counterclaim pursuant to 28 U.S.C. § 1367.

73.     Defendant's first counterclaim for declaratory relief is denied as moot in light of the court's findings and conclusions with respect to plaintiff's claims and defendant's other counterclaims.

---

[21]Plaintiff's Response to Supplemental Final Pretrial Order, Docket No. 193.

74.    Defendant's second counterclaim for relief – seeking cancellation of plaintiff's MOAB INDUSTRIES' trademark – fails because defendant's proof fails to establish by a preponderance of the evidence that plaintiff deliberately sought to pass off its MOAB vehicles as defendant's goods and defendant has no evidence of any economic harm as a result of plaintiff's resale of JEEP WRANGLER vehicles.

75.    Defendant's third and fifth counterclaims for relief – concerning dilution under 15 U.S.C. § 1125 and state law – fail for lack of any evidence that plaintiff's sale of its MOAB branded vehicles "'lessen[] the capacity of a famous mark to identify and distinguish goods or services.'"  Playboy Entrs. v. Netscape Commc'n Corp., 5 F. Supp. 2d 1070, 1075-76 (C.D. Cal. 1999) (quoting 15 U.S.C. § 1127).

76.    Defendant's fourth counterclaim for relief – for infringement under 15 U.S.C. § 1114 – fails because defendant has failed to establish by a preponderance of the evidence the likelihood of confusion between defendant's JEEP, JEEP GRILLE Design Mark, and WRANGLER, and the plaintiff's MOAB mark.

<u>CONCLUSION</u>

The clerk of court shall enter judgment dismissing Counts 1, 2, and 4 of plaintiff's complaint[22] with prejudice, and dismissing defendant/counterclaimant's first, second, third, fourth, and fifth (inclusive) claims for relief with prejudice.

DATED at Anchorage, Alaska, this 6th day of October, 2016.

/s/ H. Russel Holland
United States District Judge

---

[22]Plaintiff's Count 3 was dismissed by order (see page 32) of February 25, 2015, Docket No. 135.

DECISION                                                                          - 24 -